UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>KELLY MCCANDLESS,<br><br>Defendant. | Case No. 4:22-cr-00032-DCN-1<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court are various motions, notices, and objections the parties have filed in anticipation of trial. The Government has filed a Notice Pursuant to Federal Rule of Evidence 902(11) (Dkt. 24), a Notice of Intent to Introduce Testimony (Dkt. 27), a Notice of Intent to Introduce Evidence (Dkt. 28), and a Motion in Limine (Dkt. 29). Defendant Kelly McCandless has filed two Motions in Limine (Dkts. 32, 34) and one Objection to the Government's Notice at Dkt. 24 (Dkt. 33).

In an effort to give the parties direction on the evidentiary issues that have been raised in the Notices and Motions, the Court will set forth its views on those matters and make rulings where possible based on the information presently before the Court. These rulings, however, are preliminary and may be subject to revision upon consideration of a particular evidentiary issue presented within the context of trial.

Having reviewed the record and briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and

MEMORANDUM DECISION AND ORDER - 1

because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will rule on the Motions and Notices in this decision without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(2)(ii).[1]

For the reasons outlined below, the Court GRANTS the Government's Motions in Limine (Dkt. 29), DENIES McCandless's First Motion in Limine (Dkt. 32), OVERRULES or DISMISSES as MOOT McCandless's Objections (Dkt. 33), and GRANTS McCandless's Second Motion in Limine (Dkt. 34).

## II. BACKGROUND

In 2016, McCandless entered into a partnership agreement with MM and JH to develop an apartment complex in Rexburg, Idaho (the "Project"). Under the partnership agreement, MM received a 51% ownership interest in the Project for providing necessary capital, JH received a 24.5% interest for agreeing to manage the Project upon its completion, and McCandless received a 24.5% interest for agreeing to act as general contractor for the Project.

To finance a portion of the Project, the partners obtained a construction loan from Bank Z, with funds to be disbursed to McCandless. McCandless, in turn, was to use the funds to pay subcontractors and vendors based on invoices submitted to him. When McCandless needed a disbursement, he would submit a payment request to Bank Z via email. Bank Z would then send an inspector to the Project to verify that construction was proceeding as

---

[1] Although this is a criminal case, the local civil rule regarding hearings applies as there is no corresponding criminal rule. *See* Dist. Idaho Loc. Crim. R. 1.1(f) (explaining that "all general provisions of the Local Rules of Civil Practice apply to criminal proceedings unless such provisions are in conflict with or are otherwise provided for by the Federal Rules of Criminal Procedure or the Local Rules of Criminal Practice.").

planned. Upon such a finding, Bank Z would wire the requested funds to McCandless.

In February 2022, McCandless was indicted on four counts of wire fraud and four counts of aggravated identity theft stemming from his conduct in seeking disbursements from Bank Z for the Project. In the indictment, the Government asserts, generally, that McCandless forged and/or falsified invoices from subcontractors and vendors to artificially inflate his disbursement requests, then spent his ill-gotten gains on personal expenses and toys. Dkt. 1. For his part, McCandless denies any wrongdoing.

### III. LEGAL STANDARD[2]

"Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *Miller v. Lemhi Cty.*, No. 4:15-cv-00156-DCN, 2018 WL 1144970, at *1 (D. Idaho Mar. 2, 2018) (citing *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002)). "The term 'in limine' means 'at the outset.' A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) (quoting Black's Law Dictionary 803 (8th ed. 2004)).

Because "[a]n in limine order precluding the admission of evidence or testimony is an evidentiary ruling," *United States v. Komisaruk*, 885 F.2d 490, 493 (9th Cir. 1989) (cleaned up) "a district court has discretion in ruling on a motion in limine." *United States v. Ravel*, 930 F.2d 721, 726 (9th Cir. 1991). Further, in limine rulings are preliminary and,

---

[2] The Court outlines the general motion-in-limine legal standard here. It will outline other motion-specific legal standards within the individual sections below.

therefore, "are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

## IV. DISCUSSION

### A. McCandless's Objection to the Use of Rule 902(11) Records

Under Federal Rule of Evidence 902(11), a certified domestic record of regularly conducted activity is both admissible and self-authenticating, so long as the record meets the requirements of Rule of Evidence 803(6)(A)–(C) and is accompanied by a certification from the record's custodian. Fed. R. Evid. 902(11).

Under Rule 803(6), "a record of an act, event, condition, opinion, or diagnosis" is "not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness" if: (A) the record was made at or near the time of the act, event, condition, opinion, or diagnosis by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; and (c) making the record was a regular practice of that activity. Fed. R. Evid. 803(6).

On October 6, 2023, the Government filed a Notice stating its intent to offer as evidence certain domestic records covered by Rule 902(11). Dkt. 24. After an extension of time to file a response, McCandless filed an objection to the Government's Notice, raising issues with five of the eight proposed sets of records and/or their respective certifications. Dkt. 33.[3] On November 9, 2023, the Government filed an "updated and corrected notice,"

---

[3] McCandless's objection states that he "objects to the introduction of *six* sets of the designated records." Dkt. 33, at 1 (emphasis added). However, he specifically identified issues with only five of the sets of records.

of its plans to introduce records under Rule 902(11) and attached thereto the certification for each set. Dkt. 37. In light of the updated filing by the Government, many, if not all, of McCandless's objections are now moot or are easily overruled. Nevertheless, the Court will address each of them briefly below.

### 1. Zions Bank Records at 010477–010829

McCandless objected to a set of Zions Bank records with Bates numbers 010477–010495, arguing the certification provided by the Government lacked the specificity necessary to show that the certifying custodian understood what he was certifying. Dkt. 33, at 3–5. In the Government's updated and corrected Notice, the page range previously objected to by McCandless is now included in a set of records that spans Bates numbers 010477–010829. Dkt. 37, at 2. Significantly, along with its updated and corrected Notice, the Government has produced a new certification for the subject set that specifically identifies the documents being certified. Dkt. 37-1, at 8. Accordingly, the Court is satisfied that the document set now complies with Rule 902(11). It, therefore, overrules McCandless's objection.

### 2. Zions Bank and City of Rexburg Records Lacking Certification

McCandless next objected to the introduction of a different set of Zions Bank records[4] and a set of records from the City of Rexburg, asserting that the Government had failed to provide any certification for either set. Dkt. 33, at 5–7. However, in the updated and corrected Notice, each set of Zions Bank records is accompanied by a certification that

---

[4] In its updated notice, the Government has reorganized the Bates ranges for its proposed sets of records, resulting in the dividing of the set originally objected to by McCandless. *See* Dkt. 37, at 1–2. This division, however, is irrelevant for the reasons outlined above.

meets the standards of Rule 902(11). *See* Dkt. 37-1, at 7–9. The Government has also provided proper certifications for the records from the City of Rexburg. Dkt. 37-1, at 5–6. Accordingly, McCandless's second and third objections are overruled.

### 3. The Hand-Written Notes on Bates 13385

McCandless objected to the inclusion of one document because it contained some hand-written notes alongside the printed information. Dkt. 33, at 7–8. In its updated Notice, the Government affirms that it has redacted all markings not contained in the original document. Dkt. 37, at 6. Assuming it has done so, McCandless's objection is dismissed as moot.

### 4. The Illegible Document at Bates 000184

McCandless's final objection asserts that the document at Bates 000184 is illegible. Dkt. 33, at 8. The Government acknowledges as much in its updated Notice and agrees not to use the document as an exhibit at trial. Dkt. 37, at 6. Accordingly, this objection is also dismissed as moot. This document will not be used at trial.

## B. McCandless's Motion in Limine Regarding Testimony of Michele Lewis

Under Federal Rule of Evidence 701, opinion testimony from a lay witness is allowed only if it is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(a)–(c). However, if a witness's opinion is based upon scientific, technical, or other specialized knowledge, the witness must be qualified as an expert before his or her opinion is admissible. *See* Fed. R. Evid. 702.

MEMORANDUM DECISION AND ORDER - 6

Both the Tenth and the Eleventh Circuit have allowed individuals with financial expertise to testify about their experience reviewing financial records and documents, without being qualified as experts. *See United States v. Hamaker*, 455 F.3d 1316, 1330–32 (11th Cir. 2006) (allowing lay opinion testimony from a financial analyst because, although his expertise made him more efficient at reviewing records, the "review itself was within the capacity of any reasonable lay person"); *United States v. Caballero*, 277 F.3d 1235, 1247 (10th Cir. 2002) (allowing lay opinion testimony from an FBI financial analyst where his testimony "summarized business records and client lists and presented them in condensed form . . . ."). Further, and in a similar vein, the Court has previously allowed an accountant to testify regarding contract-related damages without having been qualified as an expert. *Edmark Auto, Inc. v. Zurich American Insurance Company*, 2020 WL 127979, at \*14 (D. Idaho Jan. 9, 2020). In *Edmark*, the Court found that, while the accountant's calculations may have been tedious, they involved only simple addition. *Id.* Therefore, the accountant had not testified as an expert.

On October 12, 2023, the Government filed a Notice of its intent to call Michele Lewis—a forensic accountant—as a witness. Dkt. 27. In its Notice, the Government made clear that it does not intend to qualify Ms. Lewis as an expert. *Id.* at 1–2. Rather, Ms. Lewis's testimony will be based on her personal review of bank records, accounting records, and other documents provided to her by the Government. *Id.* at 2. McCandless subsequently filed a Motion in Limine, requesting that the Court limit Ms. Lewis's testimony to her "rational perception of information and events" and exclude any testimony that is "based upon her background or expertise as a forensic accountant." Dkt. 34, at 3

MEMORANDUM DECISION AND ORDER - 7

(citation omitted). The Government responded to McCandless's Motion, reaffirming that Ms. Lewis's testimony will be limited to her personal experience gained from a review of financial records. Dkt. 36, at 4.

By electing not to qualify Ms. Lewis as an expert, the government has chosen to walk a narrow path here, but not an impassable one. McCandless—through his motion— apparently aims to clearly delineate the boundaries regarding acceptable testimony from Ms. Lewis. To the extent his proposed boundaries comport with the rules, he is free to do so. Accordingly, as long as any opinion proffered by Ms. Lewis is the product, not of her expertise, but of exercises and experiences that are within the capacity of a reasonable lay person, it will be permitted. Alternatively, any opinion Ms. Lewis offers that was developed through exercises and experiences beyond the capacity of a reasonable lay person will be excluded. McCandless's Motion in Limine (Dkt. 34) is GRANTED.

### C. McCandless's Motion in Limine Regarding Personal Spending

#### 1. Relevant Legal Standards

Under the Federal Rules of Evidence, any evidence that is relevant is admissible unless proscribed by the Constitution, federal statute, or any other federal rule. Fed. R. Evid. 402. Evidence is considered relevant if it makes any fact of consequence in determining the action more or less probable than it would be in the absence of the evidence. Fed. R. Evid. 401.

Rule 403 allows for the exclusion of relevant evidence if the court finds that its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

cumulative evidence." The Ninth Circuit defines "unfair prejudice" as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Haischer*, 780 F.3d 1277, 1281 (9th Cir. 2014) (cleaned up).

Finally, Rule 404 prohibits evidence of a person's character traits "to prove that on a particular occasion the person acted in accordance with [those traits]." Fed. R. Evid. 404(a)(1).

The Ninth Circuit has interpreted 18 U.S.C. § 1343—the federal statute criminalizing wire fraud—to consist of three elements. *See, e.g.*, *United States v. McNeil*, 320 F.3d 1034, 1040 (9th Cir. 2003). The first is a scheme to defraud, the second is the use of wires in furtherance of the scheme, and the third is the specific intent to defraud. *Id.*

### 2. Analysis

On October 13, 2023, the Government filed a Notice, expressing its intent to introduce evidence and witness testimony that McCandless spent fraudulently obtained money on a variety of personal expenses and toys, including a new truck, new trailers, snowmobiles, motorcycles, credit card debt, and meals.[5] Dkt. 28, at 3. In response, McCandless filed a Motion in Limine, arguing that evidence of McCandless's spending is irrelevant, that it constitutes impermissible character evidence, and that it fails the balancing test under Federal Rule of Evidence 403. Dkt. 32. The Government responded to McCandless's Motion, countering each of his arguments and urging the Court to deny

---

[5] The Government also stated its intent to introduce relevant evidence and testimony regarding McCandless's involvement in a company called Moxa Management Incorporated, and relevant evidence and testimony that McCandless produced fraudulent documents beyond those that are charged in the Indictment. McCandless did not object to these plans in his Motion in Limine (Dkt. 32), so the Court does not address them.

the Motion. Dkt. 36. The Court will address each of McCandless's arguments in turn.

<u>a. Relevance of McCandless's Spending</u>

As outlined by the Government, the Ninth Circuit has made clear that evidence of fraud can be shown by a defendant's use of funds for an improper purpose. *See United States v. Booth*, 309 F.3d 566 (9th Cir. 2002); *United States v. Rude*, 88 F. 3d 1538 (9th Cir. 1996), *as amended on denial of reh'g* (Sept. 10, 1996); *United States v. Brutzman*, 731 F.2d 1449 (9th Cir. 1984), *overruling on other grounds recognized by United States v. Trinh*, 60 F. 3d 835 (9th Cir. 1995) (unpublished disposition).

For example, in *Booth*, two businessmen received money from clients, promised to use the money to secure leases for their clients, but instead spent the money on themselves, and were subsequently charged with wire fraud. 309 F.3d at 570–571. There, the court held that evidence of the spending of the businessmen was admissible circumstantial evidence of fraud. *Id.* at 575. In *Rude*, the Court noted that "the government may, in a fraud case, prove that the defendants did not use the funds obtained for their intended purpose." 88 F. 3d at 1549 n.10. There, the Ninth Circuit upheld the district court's decision to allow the Government to distribute pie charts to the jury depicting how fraudulently obtained funds were used. *Id.* Finally, in *Brutzman*, the Ninth Circuit stated flatly, "[t]he misuse of funds directly establishe[s] the fraudulent nature of the scheme." 731 F.2d at 1452. Accordingly, evidence regarding how McCandless misused the money he received from Bank Z is far from irrelevant. On the contrary, it could serve to directly establish the second and third prongs of the statute.

### b. Proof of McCandless's Spending is Not Character Evidence

As mentioned above, Federal Rule of Evidence 404(b)(1) forbids the introduction of evidence regarding a defendant's character trait to show that the defendant acted in conformity with the trait in a particular instance.

McCandless contends briefly that the introduction of evidence regarding his "lifestyle and spending" constitutes "impermissible evidence of [his] allegedly greedy character that goes to show that he acted in conformity with that character when committing [the] alleged financial crimes." Dkt. 32, at 17. McCandless, however, overstates the Government's proposed plans. The Government has shown no intention of introducing evidence of McCandless's "lifestyle." It will not show evidence of McCandless's spending of money earned from sources other than the construction loan. Dkt. 36, at 6. Nor is the government introducing evidence of McCandless's wealth or poverty. It simply intends to show that McCandless spent money designated for expenses related to the Project on expenses that were not related to the Project. This is not character evidence at all.

### c. Evidence of McCandless's Spending Passes Rule 403 Test

As implied above, one of the questions at the heart of this case is whether McCandless spent money he received under the construction loan on anything other than Project-related expenses. Answering this question will necessarily involve an investigation into McCandless's spending. This makes evidence that directly demonstrates McCandless's spending significantly probative. While presenting an itemized list of the particular items McCandless is alleged to have purchased may present a small risk of unfair

prejudice, the Court cannot say that risk substantially outweighs the probative value of the proposed evidence. Further, the Court is confident that any minor prejudice created by the introduction of specific purchases can be limited through cross-examination.

### 3. Summary

In sum, evidence of how McCandless spent money obtained from the construction loan is not irrelevant, nor is it impermissible character evidence. Further, the risks associated with introducing the evidence do not substantially outweigh its probative value. Therefore, the Court DENIES McCandless's First Motion in Limine.

### D. Government's Motions in Limine

On October 13, 2023, the Government filed five Motions in Limine. Dkt. 29. McCandless did not respond to any of them. Thus, because they are unopposed, each motion is GRANTED. However, the Court briefly addresses each Motion below to provide additional guidance.

### 1. Preclusion from Victim-Blaming

The Ninth Circuit has established that someone who engages in intentional fraudulent conduct cannot be absolved of guilt by arguing that the victim of his or her conduct acted negligently, thereby facilitating the fraudster's actions. *United States v. Lindsey*, 850 F.3d 1009, 1013–18 (9th Cir. 2017) ("Two wrongs do not make a right, and lenders' negligence, or even intentional disregard, cannot excuse another's criminal fraud."). In its first Motion in Limine, the Government argues that this Ninth Circuit precedent precludes McCandless from asserting that, because of negligence on the part of Bank Z, MM, or JH, his alleged fraud is somehow nullified. Dkt. 29, at 3–4. The Court

agrees. Accordingly, the Court will preclude any evidence or argument blaming Bank Z or any other victim of McCandless's alleged fraud for failing to detect the fraud sooner or at all. The Government's first Motion is GRANTED.

### 2. Preclusion from Referencing Punishment

It is also well-settled in the Ninth Circuit that juries should not be induced to "consider or be informed of the consequences of their verdict." *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1992). The jury's duty is to determine the facts. The legal consequences that flow from the facts are irrelevant and potentially distracting to the jury's fulfillment of its duty. *See Shannon v. United States*, 512 U.S. 573, 579 (1994) ("[P]roviding jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion.").

Pursuant to this line of precedent and logic, the Government's second Motion asks the Court to "preclude the Defendant from making any reference to punishment before the jury, whether through statements, questions, argument, or otherwise." Dkt. 29, at 6. The Court agrees the exclusion of such statements is proper. The Government's second Motion is GRANTED.[6]

### 3. Preclusion of Exculpatory Statements Without Testimony

Criminal defendants are generally prohibited from introducing their own out-of-court statements unless they testify as witnesses. *See United States v. Ortega*, 203 F.3d

---

[6] Notably, the Court has a standard post-evidence instruction—Ninth Circuit Model Instruction 6.22—that instructs the jury that they should not concern themselves with punishment in reaching their verdict.

675, 682 (9th Cir. 2000). Accordingly, the Government moves the Court to preclude McCandless from introducing any out-of-court exculpatory statements unless he chooses to testify. The Court agrees the Government has outlined the correct format for the introduction of such statements. The Government's third Motion is GRANTED.

### 4. Preclusion from Improper Use of Agent Interview Reports

The Government's fourth Motion in Limine has to do with McCandless's use of witness interview reports prepared by Government agents and obtained through discovery. Dkt. 29, at 7–10. In *Palmero v. United States*, the Supreme Court made clear that interview reports created by government agents do not qualify as "statements" under the Jenks Act because the witness who was interviewed did not approve the reports. 360 U.S. 343 (1959). The Government acknowledges that McCandless may ask a witness whether he or she made a statement contained in a witness interview report. Dkt. 29, at 9. However, the Government contends that the contents of interview reports cannot be used to impeach the Government's witnesses, nor can McCandless use the reports in a way that suggests the report is a statement from the witness. *Id.* at 7–10. The Court agrees. Accordingly, the Government's fourth Motion is GRANTED.

### 5. Preclusion from Encouraging Jury Nullification

Jury nullification occurs when a jury chooses "to acquit out of compassion or compromise or because of the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity." *Standefer v. United States*, 447 U.S. 10, 22 (1980). It is an acquittal, despite the government having proved its case beyond a reasonable doubt. *See, e.g.*, *United States v. Powell*, 955 F.2d 1206, 1212–13 (9th Cir.

1991). Because "anarchy would result from instructing the jury that it may ignore the requirements of the law," criminal defendants are not entitled to instruct on, or otherwise encourage, jury nullification. *Id.* at 1213; *see also Merced v. McGrath*, 426 F.3d 1076, 1079–80 (9th Cir. 2005). The Government's final Motion asks the Court to preclude any evidence or argument that tends to encourage jury nullification. Dkt. 29, at 10–11. The Court finds this request is in harmony with established law. It, therefore, GRANTS the Government's final Motion in Limine.

## V. CONCLUSION

In conclusion, the Court GRANTS the Government's Notice Pursuant to Federal Rule of Evidence 902(11), GRANTS the Government's Motions in Limine (Dkt. 29), DENIES McCandless's First Motion in Limine (Dkt. 32), OVERRULES or DISMISSES as MOOT McCandless's Objections (Dkt. 33) as outlined above, and GRANTS McCandless's Second Motion in Limine (Dkt. 34).

///

///

///

///

///

MEMORANDUM DECISION AND ORDER - 15

## VI. ORDER

**IT IS HEREBY ORDERED:**

1. The Government's Notice Pursuant to Federal Rule of Evidence 902(11) is GRANTED.

2. The Government's Motions in Limine (Dkt. 29) are GRANTED.

3. McCandless's First Motion in Limine (Dkt. 32) is DENIED.

4. McCandless's Objections (Dkt. 33) are OVERRULED or DISMISSED as MOOT.

5. McCandless's Second Motion in Limine (Dkt. 34) GRANTED.

DATED: November 15, 2023

David C. Nye
Chief U.S. District Court Judge