UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br>　v.<br><br>KELLY McCANDLESS,<br><br>　　　　　　Defendant. | Case No. 4:22-cr-00032-DCN<br><br>**MEMORANDUM DECISION AND ORDER ON RESTITUTION** |

# I. OVERVIEW

This matter comes before the Court on the issue of restitution. The Court sentenced Kelly McCandless on July 2, 2024. Dkt. 95. As part of sentencing, the Government requested restitution for the two victims, Jim Hirrlinger and Mike Miekle. McCandless objected to the amount of restitution requested by the Government. Accordingly, the Court ordered that restitution had to be paid but set an evidentiary hearing for a later date (October 23, 2024) to determine the amount. Dkt. 110. The parties continued the hearing (Dkt. 111), and the hearing was held on November 21, 2024. Dkt. 115.

At the evidentiary hearing, the Court heard oral argument and testimony on restitution, agreed to allow the parties to submit closing arguments by briefs, and took the

**MEMORANDUM DECISION AND ORDER - 1**

matter under advisement once the final brief was submitted on January 16, 2025.[1] For the reasons outlined below, the Court orders restitution in the amount of $581,869.00.

## II. BACKGROUND

On February 23, 2022, the Government charged McCandless by Indictment with four counts of wire fraud in violation of 18 U.S.C. § 1343. Dkt. 1. The Indictment further charged McCandless with four counts of aggravated identity theft in violation of 18 U.S.C. § 1028A. *Id*. The Indictment stemmed from allegations that McCandless knowingly and intentionally devised a scheme to defraud his partners and their financing bank by means of materially false and fraudulent pretenses, representations, and promises, and to misappropriate without authority money and property belonging to his partners through their construction loan with the financing bank. *Id.*

The case went to jury trial beginning on November 17, 2023. Trial lasted about six days. The jury found McCandless guilty on all counts. The Court set sentencing for March 26, 2024. Dkt. 57. McCandless moved to continue the sentencing on February 14, 2024. Dkt. 71. The Government did not oppose the continuance. The Court moved sentencing to June 18, 2024. Dkt. 72. McCandless again moved to continue sentencing on June 14, 2024. Dkt. 91. The Court eventually held sentencing on July 2, 2024. Dkt. 92. At sentencing, McCandless was sentenced to 41 months on each of the wire fraud counts, to be served concurrently, and to 24 months on each of the aggravated identity theft counts, to be served

---

[1] Defense counsel filed an Errata on January 16, 2025, correcting minor errors in his prior brief. Dkt. 120. The Government also moved to file its reply brief under seal. Dkt. 121. Good cause appearing, the same is GRANTED. The document shall remain under seal.

**MEMORANDUM DECISION AND ORDER - 2**

concurrently with each other but consecutive to the wire fraud counts. This made a total of 65 months of incarceration. Dkt. 95. The Court ordered restitution in an amount to be determined later.

The Court heard oral argument and testimony regarding the amount of restitution on November 21, 2024. Dkt. 115. The parties ultimately submitted closing arguments by briefs and the Court took the matter under advisement.

### III. LEGAL STANDARD

Under 18 U.S.C. § 3664(e), "a dispute as to the proper amount of restitution must be resolved by the district court by a preponderance of the evidence." *United States v. Andrews,* 600 F.3d 1167, 1171 (9th Cir. 2010) (cleaned up). The Government bears the burden of proving that a person is a victim for purposes of restitution and the amount of the victims' losses. *Id.* To meet this burden, "the government must provide the court with enough evidence to allow the court to estimate the full amount of the victims' losses with some reasonable certainty." *United States v. Kennedy*, 643 F.3d 1251, 1261 (9th Cir. 2011) (cleaned up). In exercising its discretion in making this estimation, the Court may only "utilize evidence that possesses a sufficient indicia of reliability to support its probable accuracy." *United States v. Waknine,* 543 F.3d 546, 557 (9th Cir. 2008) (quoting *United States v. Garcia-Sanchez,* 189 F.3d 1143, 1148-49 (9th Cir. 1999).[2] The Mandatory

---

[2] Due to "the remedial purposes underlying the MVRA, . . . district courts [have] a degree of flexibility in accounting for a victim's complete losses." *United States v. Waknine*, 543 F.3d 546, 557 (9th Cir. 2008) (cleaned up). When there is a dispute as to the proper amount of restitution, the MVRA "minimally requires that facts be established by a preponderance of the evidence, and the district court may utilize only evidence that possesses sufficient indicia of reliability to support its probable accuracy." *Id*. cleaned up). Also, the
(Continued)

**MEMORANDUM DECISION AND ORDER - 3**

Victims Restitution Act ("MVRA") requires the Court to order full restitution to victims of fraud without consideration of the Defendant's economic circumstances or ability to pay. 18 U.S.C. § § 3663A(c)(1) & 3664(f)(1)(A).

To prove the amount of victims' losses, "the government must provide the district court with more than just . . . general invoices . . . ostensibly identifying the amount of their losses." *United States v. Brock–Davis*, 504 F.3d 991, 1002 (9th Cir. 2007) (quoting *United States v. Menza*, 137 F.3d 533, 539 (7th Cir.1998)). Although not requiring mathematical precision, "a restitutionary award . . . will be improper if the district court must engage in arbitrary calculations to determine the amount of the victim[s'] losses." *Kennedy*, 643 F.3d at 1261 (cleaned up). That said, district courts are granted a degree of flexibility in determining victims' losses and are to "engage in an expedient and reasonable restitution process, with uncertainties resolved with a view toward achieving fairness to the victim." *United States v. Gordon*, 393 F.3d 1044, 1048, 1053 (9th Cir. 2004), *abrogated on other grounds by Lagos v. United States*, 138 S. Ct. 1684 (2018). In fact, a restitution order is reviewed only for an abuse of discretion, provided it is within the bounds of the statutory framework. *United States v. Stoddard,* 150 F.3d 1140, 1147 (9th Cir. 1998). Factual findings supporting the restitution order are reviewed for clear error. *Id.*

### IV. DISCUSSION

The Government and McCandless agree that the victims of McCandless' crimes are Jim Hirrlinger and Mike Miekle, his former partners. Dkt 117, at11-12. However, the

---

district court must set forth an explanation of its reasoning and specific findings of fact when ordering the final restitution amount. *United States v. Marcum,* 2023 WL 5835809 (E.D. Cal. 2023).

parties disagree as to whether there should be a restitution award, and if so, in what amount. The Government argues that the victims are entitled to $1,198,054.21 in restitution. It breaks down that amount in this manner:

1. Money spent to finish the apartment project     $781,524.96
2. Lost investment revenue     $117,228.75
3. Lost rental revenue     <u>$299,300.50</u>
    TOTAL     $1,198,054.21

McCandless argues that the Government has failed to meet its burden of proof regarding the restitution amount for several reasons, stated in this manner:

1. The underlying data is inadequate to make a reasonable determination of actual loss.
2. The claimed amount of actual loss related to case infusion has changed and cannot be calculated with reasonable certainty.
3. The claimed amount for Mielke's loss of opportunity is speculative.
4. The claimed amount for loss of rent caused by delay is based on an inappropriate completion date, cannot be determined with reasonable certainty, and ignores the fact that Mielke was to be repaid his initial capital contribution before profits were distributed.
5. Any amount of loss to Mielke has to be offset by the 24.5% share of the Savoye Apartments McCandless turned over to Mielke when he was dissociated from the partnership.

McCandless did not offer any amount he claims is correct for restitution. Instead, he argues that the Government did not meet its burden so the Court cannot award any restitution.

At the outset, the Court notes that like most restitution issues in wire fraud cases, this matter is, frankly, confusing and convoluted. Both the Government and McCandless have altered, amended, and changed their positions on restitution. This is not necessarily a bad thing. McCandless's scheme was calculated, but at the same time, sloppy. Some records in this case are clear and easy to interpret; others are not.

**MEMORANDUM DECISION AND ORDER - 5**

The Court has undertaken a lengthy and painstaking review of all the documents in the record—including the trial exhibits, transcript of the restitution hearing, the parties' initial briefs on restitution, the closing briefs on restitution, and the statements or reports of each side's experts. Having done so, the Court begins by noting that two of the restitution amounts—lost investment revenue and lost rental revenue—are not recoverable as restitution in a criminal case. Lost revenue is a consequential damage and is excluded from restitution in wire fraud cases. *U.S. v. Brock-Davis*, 504 F.3d 991, 1002 (9th Cir. 2007).

In *Brock-Davis*, the government sought restitution for the victim's inability to rent out a motel room during cleanup. The Defendant used the motel room to manufacture methamphetamine. It took the victim several months to clean up the room to where the Department of Environmental Quality would allow it to be occupied again. The victim wanted compensation for the lost revenue. The trial court gave the victim $4,000 in lost revenue. On appeal, the Ninth Circuit held that the trial court erred by ordering restitution for lost revenue, stating:

> Even if the motel lost income, moreover, lost revenue is a consequential damage and is excluded from restitution in cases such as this. Accordingly, the portion of the restitution order awarding $4,000 in recovery for lost income is vacated.

504 F.3d at 1002 (cleaned up).

In *U.S. v. Pathania,* 2008 WL 3876283 (E.D. Cal. 2008), the district court explained that restitution in a crime resulting in property loss cannot include lost revenue but that restitution in a crime involving bodily injury can include lost income. That court outlined that the statute governing restitution in the case of an offense resulting in damage to or loss

**MEMORANDUM DECISION AND ORDER - 6**

or destruction of property, which is 18 U.S.C. § 3663A(b)(1), is silent as to lost future income or revenue. On the other hand, the statute governing restitution in the case of an offense resulting in bodily injury, which is 18 U.S.C. § 3663A(b)(2), explicitly allows for reimbursement for "income lost" as a result of his injuries. So, as a matter of statutory construction, Congress appears to have intended that restitution for lost revenue caused by harm to a person is recoverable while restitution for lost revenue caused by harm to property is not.

This ruling, that lost revenue cannot be recovered in this case, is not meant to sound harsh or uncaring or even as a position that the Court does not believe the loss occurred. It is simply the rule of law that this court must follow in a criminal case.[3]

The only restitution amount that may be recoverable here is the money spent to finish the apartment project. The government claims that amount is $781,524.96. McCandless claims the Government has failed to meet its burden of proof so the Court cannot award any restitution. The Government has met its burden of proof as to some of the requested restitution.

The partnership had an initial construction loan from Zion's Bank for $2,048,000 to finance the building of the apartment complex. Over the time of the fraud, McCandless had withdrawn $1,883,401 of that amount. The remaining balance was interest reserves and could not be used to finance further construction draws. There is no documentation

---

[3] Consequential damages may be recoverable in a state civil case and the Court leaves it to the victims to decide whether to pursue a civil action. However, the lost revenue cannot be recovered in this criminal case as part of the restitution imposed at sentencing.

**MEMORANDUM DECISION AND ORDER - 7**

showing the breakdown as to how much of the money McCandless withdrew went to actual construction work and how much went into his own pocket. However, the testimony at trial made it clear that multiple subcontractors were not paid what was owed to them and several times McCandless withdrew more money, based upon fraudulent invoices, over what was paid to the subcontractors. Once the fraud was discovered, the victims hired Alliance Title & Escrow to manage the receipt and distribution of all further funds needed to complete the project. Over an almost eight-month period Mielke deposited $782,911.92 into an Alliance Title escrow account. That deposited money funded the completion of the project when Alliance Title dispersed the funds to subcontractors. Once the project was complete there was a total of $1,386.96 left in the escrow account that went back to the partnership. Therefore, the victims claim $781,524.96[4] in restitution for the amount it cost to complete the project after McCandless was kicked out and the Zion's Bank loan was depleted.

The problem here is that there was no documentation that the actual cost of the project came in at, or under, the budgeted amount. The original loan was for $2,048,000. That amount plus the $781,524.96 from the Alliance Title escrow account were spent. That totals $2,829,524.96.

The Government argued at trial and in its sentencing memorandum that McCandless stole $581,869 from the victims by rewriting invoices from subcontractors and pocketing the difference between the new invoices and the original invoices. Dkt. 85, at 3. The table in the Government's sentencing memorandum shows the losses, as follows:

---

[4] $782,911.92 - $1,386.96 = $781,524.96.

MEMORANDUM DECISION AND ORDER - 8

| Trial Exhibit Number | Vendor | Amount Received from Bank | Amount Provided to Vendor | Actual Loss |
|---|---|---|---|---|
| 9201 | Blaser Construction | $267,401 | $79,921 | $187,480 |
| 9202 | City of Rexburg | $163,908 | $84,067 | $79,841 |
| 9203 | Ed Strom Construction | $267,619.15 | $145,115.68 | $122,503 |
| 9205 | Elite Roofing | $62,488 | $34,500 | $27,988 |
| 9206 | K&C Concrete | $122,645 | $42,232 | $80,413 |
| 9207 | Parker Furnishing | $151,358 | $67,714 | $83,644 |
| Total Actual Loss | | | | $581,869 |

McCandless, in his sentencing memorandum, agreed with that amount. Dkt. 87, at 2.

Subtracting the $581,869 McCandless stole from the $2,829,524.96, that leaves $2,247,655.96, which all went into the project. If the original cost was projected at $2,048,000 (the amount in the Zions Bank construction loan), that means the victims spent $199,655.96 more to build the project than originally anticipated. McCandless testified at the restitution hearing that he expected it would take around $200,000 to complete the project after he left the project. Dkt. 117, at 72. Thus, there are three "stipulated" figures at play that make up the $2,829,524.96 the victims paid to complete the project.[5] So, the only remaining issue is whether the nearly $200,000 in cost overruns is attributable to McCandless's illegal conduct.

The Government's written closing argument claims that the trial and restitution evidence prove that McCandless's conduct led to the depletion of the construction project's loan funds, the inability to pay sub-contractors, and the consequent delay in the project's

---

[5] 2,048,000 (original projected cost) + 581,869 (illegally taken by McCandless) + 199,655.96 (amount paid over the projected cost) = $2,829,524.96 (total project costs).

**MEMORANDUM DECISION AND ORDER - 9**

completion. However, the Government never proved that the overage in construction costs of $199,655.96 was caused by illegal conduct rather than just normal underestimates or cost increases of materials/labor. Even though there was clearly a delay in the completion of the project and testimony that the delay was caused by McCandless' fraud, there is no reliable testimony or evidence that the delay increased the overall cost of the project. Therefore, the Court cannot award the $199,655.96 as restitution.

The last issue to be addressed is McCandless's claim that the forfeiture of his share of Savoye must be used to offset any award of restitution. That is not correct. When the victims learned of McCandless's fraud, they refused to allow him the 24.5% of Savoye he was to receive under the contract. However, that was a civil matter and was pursuant to the language of the partnership agreement. To earn his 24.5% interest in Savoye, McCandless had to complete his capital contribution, which required him to complete all construction on the project. He did not meet this requirement before he was disassociated from the partnership in October of 2018. The 24.5% interest never vested in McCandless. There will be no offset for the 24.5% share he never received.

///

///

///

///

///

///

///

**MEMORANDUM DECISION AND ORDER - 10**

## V. ORDER

1. The Government's request for Restitution is GRANTED in PART and DENIED in PART.

2. The victims, Jim Hirrlinger and Mike Miekle, are awarded restitution in the amount of $581,869.00. The amount is due and payable immediately.

3. The Court will enter an amended judgment reflecting this amount forthwith.

4. The Government's Motion to Seal (Dkt. 121) is GRANTED.

DATED: July 29, 2025

_____
David C. Nye
Chief U.S. District Court Judge